# UNITED STATES DISTRICT COURT

## FOR THE

## EASTERN DISTRICT OF PHILADELPHIA DIVISION

| | |
|---|---|
| **NOBLE DREW ALI,** et al | Case No.: **5:18-cv-56556** |
| | **NOTICE OF FEDERAL REMOVAL PURSUANT TO TITLE 28 § 1441 §1443 AND § 1446** |
| *Plaintiff,* | |
| *Vs* | **RE: JOINDER CASE NO. 15FL02801WITH ABOVE CAPTIONED FEDERAL CASE** |
| *XAVIER MOSLEY,* et al | |
| *Defendant,* | |

**PRAECIPE TO ENTER WRIT OF EMERGENCY MANDAMUS EXHIBITS AND NOTICE OF EMERGENCY <u>INJUNCTION  REMOVAL TO FEDERAL COURT PURSUANT TITLE 28 1441, 1443 AND 1446 TO TO CLERK OF COURTS:</u>**

Kindly enter this Instrument titled: Writ of Mandamus, Exhibits Notice of Emergency Injunction,<u>Removal to Federal Court pursuant Title 28 1441, 1443 and 1446</u> for the above captioned case.

In Honour,

/s/ Noble Drew Ali,Sheik S. Johns El Grand Governor Disciple in Trust
Moorish Science Temple No.16
P.O Box 8606
Lancaster, Pennsylvania, 17604
717 615 0942
mstoa16.pa.gov@gmail.com

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

**NOBLE DREW ALI,  et al**

*Plaintiff,*

*Vs*

**MARY MONGIOVI SPONAUGLE,  et al**
*Defendant,*

Case No.: **5:18-cv-56556**

**NOTICE OF FEDERAL REMOVAL PURSUANT TO TITLE 28 § 1441 §1443 AND § 1446**

**RE: JOINDER CASE NO. 15FL02801 ALL RELATED CASES WITH ABOVE CAPTIONED FEDERAL CASE**

## ORDER

**AND NOW,** this _____day of _____, 2019 upon consideration of of Plaintiffs Noble Drew Ali and all Plaintiffs response thereto, Plaintiffs Motion be GRANTED for Preliminary Emergency Injunction

- *Mother shall have sole legal and physical custody of the children.*

- *Children will live with Mother at the commencement of Summer break 2019, allowing them time to finish out their current school year.*

- *Mother will enroll children in school for Fall 2019, in Alameda County where she lives.*

PAGE **1** OF **3**

- *Father shall have weekly access to the children, including visits and daily phone calls.*
- *NON CUSTODIAL parent gets the children every other weekend, Friday - Monday morning during the school year.*
- *Father shall refrain from emotional and mental abuse of the children as well as derogatory conversation about mother, mother's family and belief system.*
- *Father is required to attend therapy and 20 hours of parenting classes to continue to have access to the children. Must be completed by September 2019.*
- *Father will be allowed 4 hours of professional supervised visitation with the children for failure to complete therapy and classes by September 2019.*
- *Mother and father will split the summer 50/50 - Father gets the 1st half; Mother gets the second half.*
- *Children are NEVER to be vaccinated as this is against Moorish American Law!*
- *Father shall pay mother $5,000/mo. in child support.*
- *Exchanges shall occur in Fairfield, California. All exchanges shall be peaceful and conflict free.*
- *Father shall check in with mother before taking children out of the state and is not to make plans to take the children out of the Country until a notarized agreement is made between he and Mother.*
- *Mother and father shall discuss medical and educational decisions.*
- *In the event Mother and father disagree on major decisions, Mother's decisions about health and education take precedence as governed by the laws of her religious society.*

- *Mother and father shall continue co- parenting counseling in Sacramento with Stephanie Stilley for a total of 6 sessions.*

- *In the event of conflicts, Mother and Father are to resolve conflicts, as much as possible, within their faith based communities. If issues cannot be resolved peacefully without court interference, father will be responsible for any and all court fees including attorney fees of Mother.*

BY THE COURT

HONORABLE JOSEPH F. LEESSON JR
United States District Court Judge

# UNITED STATES DISTRICT COURT

## FOR THE

## EASTERN DISTRICT OF PHILADELPHIA DIVISION

|  |  |
|---|---|
| **NOBLE DREW ALI, et al** | Case No.: **5:18-cv-5655**<br>RE: **15FL02801** |
| *Plaintif,* | |
| *Vs* | **NOTICE OF AFFIDAVIT**<br>REMOVAL TO FEDERAL COURT<br>PURSUANT TO TITLE 28§ 1441,<br>§ (C)(A)(1) |
| **XAVIER MOSLEY, et al** | JOINDER OF RELATED CASES AND<br>PERMISSIVE JOINDER RULE **20** (A)(1)(B) |
| *Defendant,* | **TITLE 28 U.S.C §1331 FEDERAL<br>- QUESTION United States Republic<br>Constitution and Treaty of<br>Peace and friendship** |
| *See defendants list* | |

RE: 15FL02801

## NOTICE OF JOINDER
## TITLE 28 § 1441 (C)(A)(1) JOINDER OF RELATED CASES, F.R.C.P PERMISSIVE JOINDER RULE 20 (a) (1)(B) TITLE 28 § 1331 FEDERAL QUESTIONS CONSTITUTION LAW  AND TREATIES.

Comes now in special appearance not in subjection to this court; however to clear a matter up.  I  Sheik S. Johns El, Governor, Magistrate and Divine Minister, Disciple in trust for Prophet Noble Drew Ali Moorish Prince, Successors and heirs in trust in ( Califa 41.2033° N, 77.1945° W also known as California), a Jural Religious Society in the Moorish Divine and National Movement of North America, a corporate body politic (State within a State). Pursuant to Title 28 U.S. Code Section 2242 and Title 22 Chapter 2 Section 141 Consul in manner of "Amicus Curiae;" Moorish Legal Counsel Representatives in accordance to the Circle Seven ( Divine Constitution and By Laws)  and the Grand Advisor  and Moderator Article 29 Section 1 and Section 12 Clause 1-3  Rules and Regulations of the Moorish Science Temple  an Islamic Body Politic and in accordance with Rubrics and Conventional International  Private Civil  Law of 1928  Article 14 and 15 and as prescribed in Article Six, Section I Clause Two of the Constitution of the United States....Treaty of Peace and Friendship Morocco and United States 1786, Articles 20 and 21 being the Supreme Law.

Whereas Sis Keneice Ford El and Her Children Sis. Nia Ford- Mosley El and Bro. Naeem Ford-Mosley El are free National Beings, descendants of Moroccans and born in America, Moorish American Moslems who are Citizens of the Asiatic States of North America and are under the Divine laws of the Holy Koran of Mecca and raise the Federal Questions of improper venue, Jurisdiction to this administrative tribunal courts, that entertains unconstitutional statutes and codes that is diametrically opposed to the American Constitution of

1774/Articles of Association/Declaration of Independence, and abrogates the 1st Amendment of the Organic Constitution of the united States of America Republic, Violates the Treaty of Peace and Friendship Articles 20 and 21 in matters of civil disputes arising from Christian Nation (States) imposing their laws on this Islamic Nation (Asiatic States of North America = Subordinate Temples under Charter issued out by the Prophet Noble Drew Ali per Article 47 section 13-14 of The Grand Advisor and Moderator ) or vice versa and lacks Jurisdiction to entertain Constitutional law and Treaties pursuant to the adopted constitution ratified in 1791 by and are prohibited to hear or adjudicate cases that are party to Article VI "and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding". Thus, will be properly enjoined to **Federal Civil Case: 5:18-CV-5655.**

Pursuant to Foreign Relations and intercourse **Title 22 Chapter 2 section 141** *Judiciary Authority generally* (territories formerly a part of the **former Ottoman Empire** [Now the Current Moroccan Empire] Northwest and Southwest shores of Africa = North, South, Central America and adjoining islands) and **Title 22 Chapter 2 section 143** *General jurisdiction in Civil cases.* Such Officers are invested with all judicial authority necessary to execute the provisions of such treaties, respectively, in regards to civil rights, whether property or person; and they shall entertain jurisdiction in matters of contract, at the port where, or nearest to which the damage complained of was sustained. Provided such port be one of the ports at which the United States are represented by consuls, such jurisdiction shall embrace all controversies between citizens of the United States or other, provided for by such treaties respectively (R.S§ 4085).

Claimant raises federal questions and removes this civil action to federal court and joinder State Case titled: Case No. 15FL02801 and remove to proper **Federal Jurisdiction,** The Defendants lacks free Natural being Personum and Subject Matter Jurisdiction and this cases is based solely upon the defendant's compelling interest and cares not if it abrogates life liberty and the pursuit of happiness which is enamored in the American Constitution of 1774 and the Treaty of Peace and Friendship Articles 20 and 21, which is still enforced today.

I certify that this Affidavit is right and exact and is being sent to you on the date below.

Date: 04/16/2019

S /Noble Drew Ali Sheik Johns El, S

Noble Drew Ali, Disciple in Trust Sheik S. Johns El Grand Governor and Ordained Divine Minister, an Executive Ruler of the Grand Body of the Moorish American Divine and National Movement of North America

Sheik S. Johns El Grand Governor and Ordained Divine Minister, an Executive Ruler of the Grand Body of the Moorish American Divine and National Movement of North America.

Noble Drew Ali,
Moorish Science Temple No.16
P.O Box 8606
Lancaster, Pennsylvania, 17604

mstoa16.pa.gov@gmail.com
mstofa.ca.gov@gmail.com

NOTICE OF AFFIDAVIT REMOVAL TO FEDERAL COURT PURSUANT TO TITLE 28-4

(717)615 0942
(510) 260 3812

_____

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT PHILADELPHIA DIVISION

| | |
|---|---|
| NOBLE DREW ALI, ET AL<br><br>Plaintiff,<br><br>Vs.<br><br>XAVIER L. MOSLEY, ET AL<br><br>Defendant | **Case No. 5:18-cv-5655**<br><br>Removal To Federal Court By Virtue Of Title 28 Statute 1441-1443 And 1446 , Lower Court Case No. 15fl02801<br><br>Free National Constitution Divine Constitution Articles 1 Through 7  And By-laws Articles 1-7, Treaties ( Peace And Friendship Articles 20 And Articles 21 1786-87 And 1836, Federal Free National Constitution 1787 1786-1787, Article 6 Clause 2 (Supremacy Clause) Article 3, 4, 5, 6 1st, 4th, 5th Amendments<br><br>**NOTICE OF EMERGENCY INJUNCTION** |

Demand for emergency injunction is required to protect the religious rights of the claimant from being violated and deprived in the past and present by an administrative process issued custody order. this order is in violation of the religious moorish law under the holy koran of mecca as given to the claimant, her children and all Moorish American Moslems by their most holy divine prophet Noble Drew Ali within The Moorish Science Temple of America, regency of an Asiatic Islamic State, we have our own free national constitution and by-laws. With these administrative processes our religious rights and due process has also been violated in the past and in the present and deprived under the *1st, 4th, and 5th Amendments Of The Constitution Of The United States Of America And Treaty Peace And Friendship 1786-87, 1836 Articles 20 And Articles 21.*

An emergency injunction is required immediately because the past and present administrative processes are harmful procedures carried out in sacramento family court seeks to disqualify the religious laws of which the claimant is subject to. The only law the claimant and her children are to follow is that of her Prophet Noble Drew Ali. Act 4 of the divine constitution and by-laws state, " these laws must be strictly preserved by all members (citizens) of the Moorish Science Temple Of America" etc, divine instructions in grand advisory,

NOTICE OF EMERGENCY INJUNCTION - 2

moderator rules and regulations of the Moorish Science Temple Of America

Article 47 Section 13 Clause 1: "These holy and divine laws are from the prophet

Noble Drew Ali the founder of the uniting of The Moorish Science Temple Of

America". Section 13 Clause 1: "These laws must be strictly preserved by all

members of all the temples, of The Moorish Science Temple Of America. etc"

      The current custody order requires an objection as the order was given

by a commissioner rather than a judicial officer of family court therefore rendering

the order bogus. The bogus order is given to sacramento family court who, has

seized natural children from their natural mother and has caused serious pain and

suffering as a result of this seizure. The current court order has seized legal custody

blocking the claimant who is also the mother of the children from making

important, life influencing decisions such as medical care. One of the children of

the claimant has a special medical circumstance that has resulted in two very

serious surgeries, one of which mother was not allowed her input prior to surgery.

Mother was not allowed to provide her child with religious preparation for the

surgery nor was mother allowed to be present at the hospital while the surgery was

being performed on her child. Mother was not allowed to see her child after

surgery or provide care for him. This goes against her religious law as Article 25

Clause 18 -23 says "The care of her family is her whole delight... and the words of her mouth is the law of their youth", etc. Any and all medical care for Moorish children must be guided by the heart and mind of their mother. The state government has no authority to block the medical participation and guidance of the children's mother.

The natural children and rights of the claimant have been seized by the defendant in response to receiving an administrative custody order without the required judicial confirmation and is without lawful force and effect as prescribed by the Supreme Court of The United States In Matter "Burnham V. Superior Court Of Cal., County Of Marin, 495 Us 604 - Supreme Court 1990."

1. The custody order did not arise from trial by jury under common law, therefore is without a judgment by peers and is without lawful force for it is not signed by a judicial authority, therefore void coram non-judice for lack of jurisdiction. Any signature by a person not a judge is void coram non-judice for lack.

2. A custody order issued by the sacramento county superior court, a governmental agency that is part of the executive branch of state government, is akin to executive imprisonment causing the seizure of

natural children from their natural parent without the required judgment by peers is considered oppressive and lawless. the courts were established to remedy any acts that are oppressive and lawless, therefore an injunction is a required remedy against any further or future acts of executive imprisonment. "*Executive Imprisonment Has Been Considered Oppressive And Lawless Since John, At Runnymede, Pledged That No Free Man Should Be Imprisoned, Dispossessed, Outlawed, Or Exiled Save By The Judgment Of His Peers Or By The Law Of The Land. The Judges Of England Developed The Writ Of Habeas Corpus Largely To Preserve These Immunities From Executive Restraint.*" ***Shaughnessy V. United States Ex Rel. Mezei, 345 U.S. 206, 218-219 (1953) (Dissenting Opinion).***

3. The claimant is motioning the court to enforce the supreme court's opinion of due process of law requiring that seizure of natural children under due process of law requires a judgment by peers arising from a trial by jury by common law. "*The words, "due process of law," were undoubtedly intended to convey the same meaning as the words, "by the law of the land," in magna charta. lord coke, in his commentary on those words, (2 inst. 50,) says they mean due process of law. The constitutions which had been*

*adopted by the several states before the formation of the federal*

*constitution, following the language of the great charter more closely,*

*generally contained the words, "but by the judgment of his peers, or the law*

*of the land."* **Murray's Lessee V. Hoboken Land & Improvement Co.**

**(1856)**.

4.  The claimant is motioning the court to enforce the supreme court's opinion

    *under the common law of torts, the right to refuse any medical treatment*

    *emerged from the doctrines of trespass and battery, which were applied to*

    *unauthorized touchings by a physician. See, E.G., Superintendent Of*

    *Belchertown State School V. Saikewicz, 373 Mass. 728, 370 N.E.2d 417,*

    *1977 Mass. Lexis 1129 (Mass. 1977)*

5.  Thereby this court is bound by the supreme law under article 6 section 2 to

    support the constitution of the united states of america and its laws. "*this*

    *constitution, and the laws of the united states which shall be made in*

    *pursuance thereof; and all treaties made, or which shall be made, under the*

    *authority of the united states, shall be the supreme law of the land; and the*

    *judges in every state shall be bound thereby, any thing in the constitution or*

    *laws of any state to the contrary notwithstanding.*"

## THE 1ST AMENDMENT PROHIBITS ANY LAW DEPRIVING FREE EXERCISE OF RELIGION

1. Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to motion the government for a redress of grievances. *loss of first amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. though first amendment rights are not absolute, they may be curtailed only by interests of vital importance, the burden of proving which rests on their government.* **Elrod V. Burns, 96 S Ct 2673; 427 Us 347, (1976).**

## THE 5TH AMENDMENT REQUIRES DUE PROCESS FOR DEPRIVATION OF LIFE, LIBERTY AND NATURAL CHILDREN

1. The 5th Amendment requires due process for deprivation of life, liberty and freedom, therefore before the defendant can deprive the natural parent of rights or access to natural children the defendant must provide discovery of a judgment by peers. *"parent's interest in custody of his or her children is a*

NOTICE OF EMERGENCY INJUNCTION - 7

*liberty interest which has received considerable constitutional protection; a parent who is deprived of custody of his or her child, even though temporarily, suffers thereby grievous loss and such loss deserves extensive due process protection.* **In The Interest of Cooper, 621 P 2d 437; 5 Kansas App Div 2d 584, (1980)**.

2. The defendant is required to follow due process, a judgment by peers or warrant from a court of competent jurisdiction.

## The 4th Amendment Requires That Property Shall Not Be Seized Unless By A Warrant

1. The 4th Amendment Requires a warrant based upon probable cause issued by a court of competent jurisdiction and signed by a judge before the seizure of property and in this instance natural children.

2. The 4th Amendment does not allow for provisions for administrative orders from an administrative agency to seize natural children with the same legal force and effect of a warrant from a judicial court.

3. Furthermore, the separation of powers doctrine prohibits an administrative agency from performing the same duties as a court of competent jurisdiction

under the judicial branch of state and federal government. *"Article III,*

*Section. 1:  The judicial power of the united states shall be vested in one*

*supreme court, and in such inferior courts as the congress may from time to*

*time ordain and establish."*

Equal protection of law and supremacy clause requires this court to issue

injunction to dismiss the order in place supporting the unlawful seizure of

unalienable rights, natural children, and deprivation of their natural mother, in

violation of state and united states constitutions.

1. Equal protection of law requires this court to issue an injunction because

    the seizure of children without a warrant are in violation of the 4th

    Amendment Bill of Rights and The California State Constitution, *"the*

    *right of the people to be secure in their persons, houses, papers, and*

    *effects against unreasonable seizures and searches may not be violated;*

    *and a warrant may not issue except on probable cause, supported by*

    *oath or affirmation, particularly describing the place to be searched and*

    *the persons and things to be seized, [Section 1-13]"*.

2. Equal protection of law requires this court to issue an injunction because any custody order issued by a commissioner is unlawful and a violation of search and seizure and separation of powers doctrine.

3. Equal protection of law requires this court to issue an injunction because causing the dispossession of natural children without the required warrant or a judgment by peers is a violation of due process. The judicial courts were established to remedy any acts that are in violation of due process that require a warrant or a judgment by peers when natural children are separated from their natural parent(s), therefore an injunction is required to protect the natural children of the claimant and remedy against any further or future acts of unlawful separation. *"Executive imprisonment has been considered oppressive and lawless since john, at runnymede, pledged that no free man should be imprisoned, dispossessed, outlawed, or exiled save by the judgment of his peers or by the law of the land. The judges of england developed the writ of habeas corpus largely to preserve these immunities from executive restraint."* **_Shaughnessy V. United States Ex Rel. Mezei, 345 U.S. 206, 218-219 (1953) (Dissenting Opinion)._**

## EVIDENCE IN SUPPORT

1. True copy of custody order is proof the natural children of the claimant is being dispossessed by an administrative document and not a judgment by peers, proof of a violation of due process.

## DENIAL OF THIS INJUNCTION

1. The claimant is fully confident the sufficiency of this pleading has provided facts and evidence for the court to issue an injunction and a denial of this injunction must be accompanied by a full clarification of evidence of a judgment of peers or a warrant by a court of competent jurisdiction.

2. A dismissal of this motion for injunction requires a full clarification by this court to lawfully explain the following questions of law.

3. How can a state law not be repugnant to the state and u.s.a. constitution when it allows the claimant's natural children to be seized without a warrant issued by a court of competent jurisdiction and signed by judicial authority?

4. How can a state law not be repugnant to the state and u.s. constitution when it allows the claimant's natural children to be deprived of their mother without a trial by jury resulting in a judgment by peers?

5. This court must take judicial notice of precedence set by the supreme court of the united states in matter *Marbury V Madison, 5 Us (2 Cranch)137, 174, 176, (1803)* prescribed the following, "*all laws which are repugnant to the constitution are null and void*".

6. The seizure of the claimant's natural children by a custody order issued by family court and not by a warrant from a judicial court as secured by the california state constitution and 4th amendment of the bill of rights, is clearly unconstitutional and this court must stop by this injunction.

7. Thereby, for any state law allowing for the deprivation a parent's right to their natural children, it must require a judgment by peers arising from a trial by jury for it to be constitutional, or the state law is repugnant and void.

8. Natural children kept from a natural parent by a custody order issued by a family court is unconstitutional because it is not a warrant and a family court is not a court and violates the separation of powers doctrine.

9. For the reasons described in numbers 1-9 this court is without jurisdiction to dismiss this injunction.

Under section 28 U.S.C. 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 16, 2019.

/S/ Noble Drew Ali Sheik Johns El,S.
Grand Governor Disciple in Trust

Noble Drew Ali
P.O. Box 6806
Lancaster Pennsylvania  17604
mstoa16.pa.gov@gmail.com
717 615 0942

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

————————————

Noble Drew Ali, et al

————————————

*Plaintiff*

Vs.

Xavier L. Mosley, et al

————————————

*Defendant*

Case No : **5 :18-cv-5655**

*RE : 15FL02801*

————————————

## In Re: Noble Drew Ali's Jural Religious Society
## EMERGENCY WRIT OF MANDAMUS

————————————

# REMOVAL TO FEDERAL COURT PURSUANT TO TITLE 28 § 1441, 1442, 1443 AND 1446, LOWER COURT CASE NO. 15FL02801

# TABLE OF CONTENTS

TABLE OF DIVINE AUTHORITY......................................... 2

RELIGIOUS AFFIDAVIT OF FACTS........................................ 3

INTRODUCTION.............................................................. 15

SUMMARY OF ISSUES...................................................... 17

NAEEM'S MEDICAL HISTORY............................................. 17

HISTORY OF DOMESTIC ABUSE.......................................... 20

DEFENDANT'S PERJURY.................................................... 22

INJURY BY ADDITIONAL DEFENDANTS............................... 23

AFFIRMATION .............................................................. 24

ORDER............................................................. 25

1

## TABLE OF AUTHORITY

1. Free  National Divine Constitution and By-Laws:
   a. Article 1
   b. Article 4 and 5
   c. 6 and 7
   d. *Grand Advisor and Moderator rules and regulations Moorish Science Temple of America:*
      *Article 23: Sections 1 - 13*
      *Article 47: Section 9 - 13 & 15*

2. 101  Statutes Questionnaire
3. United States Federal Constitution
   Article 4
   Article 6 Clause 2 Supremacy Clause

   1st Amendment
   4th Amendment
    5th Amendment

RELIGIOUS AFFIDAVIT OF FACTS

I, Keniece Ford – El, Claimant in this case declare:

1. The above captioned case is removed pursuant to title 28 § 1441 Joinder of related case, case number 15FL02801, removal to federal court. § 1443 Civil Action and 1446 Removal to Federal Court General. And § 1331 Constitution laws and Treaties United States Constitution 1787 including but not limited to the Treaty of Peace and Friendship Articles 20 and Articles 21 1787, Free National Constitution Divine Constitution and By-Laws, Grand Advisor and Moderator Rules and Regulations of the Holy Koran of the Moorish Science Temple of America and the Holy Koran of Mecca, the Great Koran of Mohammad.

2. I am the natural person Keniece Ford – El. My son is the natural person Naeem Ade Ford-Mosley - El. My daughter is the natural person Nia-Zarah Gennoise-Ford Mosley - El, and we are by birthright and nationality, Moorish Americans and members of the Moorish Science Temple of America, #77, a Lawfully Chartered Religious Society an Ecclesiastical Government, Subordinate to the Grand Major Temple, that is protected by the First Amendment of The U.S. Constitution of the United States of America, which protects all of our unalienable rights given to us by God - Allah. The Moorish Science Temple of America derives its power and authority from the Great Koran of Mohammed to propagate the faith and extend the learning and the truth of the Great Prophet Ali, in America. ***See our Authority filed for the record in the State of Illinois, Cook County Form 1099-Book 521-page 579-SS#10105905 via The Religious Corp. Act. See also Hurd's Rev. Stat. Chapter 32, 36 or appointed Or Warden, vestrymen, or WHATEVER NAME THEY MAY ADOPT.***

3

3.  My ancestors were not, therefore my children and I are also not Negro, Black, Colored, African - American, etc. which is a violation of the American Constitution and my Free National Constitutional pursuant to the *Holy Koran of the Moorish Science Temple of America Chapter 47 verses 9 - 13 & 15, "According to all true and divine records of the human race there is no negro, black, or colored race attached to the human family". "What your ancient forefathers were, you are today without doubt or contradiction", "there is no one who is able to change man from the descendant nature of his forefathers; unless his powers extends beyond the great universal Creator Allah himself. These holy and divine laws are from the Prophet Noble Drew Ali, the founder of the uniting of the Moorish Science Temple of America. These laws are to be strictly preserved by the members of all the Temples, of the Moorish Science Temple of America. "The time has come when every nation must worship under its own vine and fig tree, and every tongue must confess his own".*

4.  According to *Act 6* of the *Moorish Science Temple Divine Constitution and Bylaws, "all members must proclaim their nationality and the Divine Creed".* Myself and children proclaimed our Nationality and Divine Creed on March 30, 2018. This puts us under the protection of the Prophet and not the state of California. According to the 1st amendment of the United States Constitution, myself and children are under Religious tenet and Congress can make no law regarding religious laws and regulations.

5.  The only law that I am to follow are the laws given to me by the Prophet Noble Drew Ali. Article 4 of the National Divine Constitution and By-Laws state, *" These laws must be strictly preserved by all members (citizens) of the Moorish Science Temple of America"*

4

*etc, Divine Instructions in Grand Advisory,  Moderator Rules and Regulations of the Moorish Science Temple of America chapter 47 Section 13 Clause 1: "These holy and divine laws are from the Prophet Noble Drew Ali the founder of the uniting of the Moorish Science Temple of America". Section 13 Clause 1: "These laws must be strictly preserved by all members of all the Temples, of the Moorish Science Temple of America. Etc"*

6. The Moors of a clean and pure Nation have our own laws and are not to amalgamate (copulate) and marry (do business or allow interference with our affairs). The agency of the States are mere agents of the Christian Religion. The Prophet Noble Drew Ali *tell us, "Keep the Europeans out of ur affairs and stay out of theirs".  Act 7 of our Free National Constitution states that "Husbands must support their wife and children. Wife is to obey their husband take care of the children and look after the necessities of the household. Sons and daughters are to obey their father and mother and be industrious and become a part of the uplifting of fallen humanity", etc.  This our family law. There is no need for translation or intercession.*

7. Myself and children are heirs to the estate of the Plaintiff, Noble Drew Ali,  named within the class action lawsuit, case# 5:18-CV-5655.

8. I domicile in Alameda County, City of Oakland, California.

9. The other defendants domicile and/or work in Sacramento, California.

10. My complaint include defendants: Xavier L. Mosley, Darci McKean, Commissioner Scott L. Tedmon, Commissioner John P. Winn, David Elliott, Ann Cinnamon, Dr. Gary Bean, Children's Hospital of San Francisco.

11. I have never been convicted of any crime against anyone or anything including and most importantly, my children.

12. *Act 7* of the *Moorish Science Temple Divine Constitution and Bylaws* says, *"Wife, you must obey your husband and take care of your children and look after the duties of your household".* My children and I have been deprived of our divine right as Moorish Americans to follow our divine law as given forth by our Prophet Noble Drew Ali because I have been blocked from caring for them. My children have been denied daily access and care from their mother and instead put in the hands of their father's hired help.

13. I share two children with the defendant Xavier Mosley: Naeem: Ade-Mosley Ford El; 13, and Nia-Zarah Gennoise-Mosley Ford El; 11.

14. My children and I have been the victims of vexatious litigation carried of by the defendants, who have repeatedly mistaken myself and children for Black/African American people even after being corrected multiple times. I have put our religious law in front of Mr. Mosley and his lawyer, Ms. Darci McKean. In response, she suggested to the family evaluator, Mr. David Elliott, that I may have a " mental issue". Mr. David Elliott also suggested to the court that I was not entitled to "sign my child up for" my religion, suggesting my children are somehow different from what I am.

15. Mr. Mosley has used this incident and my efforts to protect our children and my divine right to mother them against me by filing frivolous emergency orders through the Sacramento Family court. Most have been granted without due process. I was even blocked from being present for our son's surgery on September 7, 2018, including all doctor visits, pre and post surgery.

16. Per my religion, I am under divine instruction to care for my children and raise them as healthy, functional members of society. My children are protected under our religious law as Moorish Americans from receiving potentially poisonous medical treatments like vaccinations and multiple invasive surgeries with no certain cure in sight. I am an educated, integrative health care professional who has always, when within my ability, used integrative health modalities to treat myself and children of illness and disease. Not only am I professionally competent, but I am divinely instructed to care for my children. I have been denied this unalienable right protected by the *1st Amendment of the Constitution of the United States of America*.

17. The current court order impedes on my birthright to follow divine instruction given to me by my Prophet, Noble Drew Ali as outlined in the *Great Holy Koran Chapter 23; Verses 1 - 13.*

18. I have experienced the defendant as disturbingly manipulative and genuinely believe he poses an imminent threat and danger to both myself and our children. He comes from a family of men who have a long history of harming women.

19. The defendant has made claim after claim against me that remains unsubstantiated yet the court continues to support his lies and is blocking me, their natural mother, from access to our children and is otherwise violating my divine right to mother my children without due process, something that is guaranteed in the *5th Amendment of the Constitution of the United States of America..*

20. On June 5, 2015 the Mr. Mosley filed a motion for an ex parte hearing in Sacramento, California Family Court, on the grounds of child abduction, Case # 15FL02801. A copy of the

7

motion is attached as **exhibit A.** This was the first emergency motion filed by the defendant granting him full legal and physical custody based on the perspective that I abducted our children.

21. I responded without a lawyer, asking for a continuance, which would allow me time to hire a lawyer but the continuance was denied.

22. On June 5, 2015, Commissioner John P. Winn received false testimony as provided by the co-defendant and his attorney that I kidnapped our children when I took them to Atlanta, Georgia without father's knowledge. Although there was **NO** previous custody order in place nor was there an existing parenting agreement, Commissioner Winn made an unlawful order granting the co-defendant temporary legal and physical custody, and still **NO** criminal charges were filed, meaning there was no true unjury to anyone or anything but Mr. Mosley's feelings.

23. The court, because it is an administrative court and not a judicial, Article III court, made an unconstitutional act by deriving me of my natural children without issuing a warrant, allowing due process, and allowing a jury of my peers to decide over this case. It has been a railroading.

24. This was the first time, under color of law, the Sacramento Superior Court violated my religious law to care for my children, as protected by the constitution when it separated us and granted us only six hours a week of supervised visitation.

25. My children and I suffered five months without consistent contact with each other as the Mr. Mosley blocked most attempts.

26. I returned to California in October of 2015 to take Mr. Mosley back to court seeking more time with my children.

27. In December 2015, though some relief was granted, the court continued to violate our rights to follow our religious law by granting me visits with my children every other weekend on Saturdays and Sundays.

28. In June of 2016, Mr. Mosley and I agreed, via bad legal counsel, to a temporary parenting plan through our lawyers, agreeing that ***the defendant would hire*** a Family evaluator in exchange for going to trial. The court ordered a 3111 evaluation as a result. The defendant never followed through with our agreement, never making time to work together to find an evaluator because he was happy with the power he held as the custodial parent.

29. Mr. Mosley has fought to become our children's custodial parent though he's hardly home to care for them. Our children are instead cared for by nannies and other hired assistance. This poses a huge problem because I am divinely instructed, as their mother, to care for our children and raise them according to our customs as Moorish Americans.

30. Our son was diagnosed with childhood depression in 2014 during the dissolution of mine and his father's relationship.

31. In October of 2016 our son was also diagnosed with a rare bone tumor in his skull that has left him blind in his left eye. Because of this discovery, the defendant and I put our differences aside and began co-parenting more efficiently. Our son came home with me post his first surgery in October of 2016 so that I could care for him as I am divinely instructed to do.

32. In August of 2017, after enrolling him in a homeschool program, the defendant and I agreed that Naeem would be with me in Oakland Thursdays through Mondays per his request and medical needs.

33. The defendant and I co-parented for a year and a half based on an oral agreement of 50/50 shared legal and physical custody until March of 2018 when our son ran away from his home.

34. Our son began to grow more upset and impatient with his father for keeping him away from me. I continued to encourage our son to express his feelings and desires to his father nonetheless, but his father would dismiss his feelings by saying things like, "I don't believe you" when our son expresses how he feels.

35. Mr. Mosley caught Naeem running away from his home on March 16, 2018 after the defendant blocked him from coming to my home because I was traveling that weekend. I offered to stay home, take Naeem with me, or to my mother's for the weekend to appease the defendant even though there were no stipulations in the agreement or court order that stated I was not allowed to travel with my children or leave them with family members, but the defendant refused all proposals.

36. Naeem made another attempt to run away from his father's home, this time successful on March 21, 2018. He's been trying to get back to me, his mother but as constantly been denied although he is also protected by his religious right to be with and cared for by his mother.

37. Naeem called a family member and begged her to pick him up because he felt unsafe and "needed to leave". Naeem was home with the nanny when he left defendant's home.

38. I later received a text from the defendant asking if I had picked Naeem up from his house.

39. I continued to text the defendant asking for more details. He blocked my number so that he could tell the court I never responded to his texts.

40. Defendant accused me of coaching Naeem to run away. While I knew of Naeem's emotional unrest and desire to leave the defendant's home, I did not coach him to leave the home. According to Moorish Divine law, children are of the age to make decisions for themselves at twelve. When this all occurred, Naeem was 12 and fully capable of deciding where he wanted to be.

41. Once I was notified about Naeem leaving the defendant's home I called the defendant several times to speak with him about what he thought might be going on with our son but was met with silence. I called the police and attempted to make a report. The police told me that they could not get involved but that I should contact the D.A.'s office, of which I did.

42. I went to Sacramento and picked Naeem up from our family member's home, something any concerned mother would do.

43. When I arrived to our family member's home Naeem was shaken up and begged me to take him home with me. He told me he's afraid of his father, that he feels depressed and uncomfortable in his home and that he couldn't stay there another night.

44. Again, I reached out to the defendant asking to speak to him but was met with silence because he had blocked my number.

45. Naeem was with me a total of two weeks after running away from his father's home. The defendant never called to check on him nor did he return any of Naeems attempts to reach out and connect to him. I reached out again hoping to resolve things as we had been doing

well resolving our own issues outside of the court for a year and a half. He never returned any phone calls.

46. In response to our son running away, defendant blocked me from seeing or speaking with our daughter the entire month of March.

47. After trying to get in touch with our daughter by phone and asking to see her for over a week, I picked her up from school on Friday, March 30, 2018, the weekend I was scheduled to have her, and returned her to school on Monday, April 1, 2018 as I have done every week over the last year and a half.

48. Defendant showed again he had not changed and was not interested in relinquishing his control. He showed no interest in working together to discover what was going on with our son, instead he did what he has done in the past. He broke our agreement, used excessive force and filed another ex parte application on April 5, 2018 with the court on the grounds of abduction. Again, he was granted full legal and physical custody of our children pending the recommendation via a 3111 family evaluation report.

49. The 3111 report was finished and shared with both parties on Monday, January 6, 2019. The report was biased and riddled with issues, one being the acknowledgment of my children's need to spend more time with me, especially my son, but still denying full legal and physical access because of "my behavior". The 3111 recommended the Mr. Mosley continued to temporarily exercise sole legal and physical custody until I can prove "good behavior".

50. The 3111, which was funded by Mr. Mosley,  sought to position me as irrational and unable to make good parenting decisions but by whose standards? I follow divine law. The

12

evaluator, Mr. Elliott, cannot trump the laws of my religion. His report showed lots of evidence of my children wanting to be with me and their unhappiness about being separated from me. To this day there ae NO criminal charges against me. I have never hurt or endangered my children. The *4th Amendment of the Constitution of the United States of America says property shall not be seized unless by a warrant*, but my children have been taken anyway.

51. I reported the abuse I endured by the hands of Mr. Mosley, gave accounts of the domestic abuse Mr. Mosley witness as a child as a result of his father beating his step-mother, showed evidence of Mr. Mosley being arrested for domestic violence against an ex-girlfriend of his, and still the evaluator, who is also a defendant in this case, Mr. David Elliott still saw no validity in my account of what is going on between Mr. Mosley and I. In fact, he omitted information, put words in my children's mouths, and declared my domestic violence claims as false.

52. My right to parent is a divine right and the way Mr. Mosley and I manage our parenting responsibilities is a private matter. The County of Sacramento has no interest in our family because there has been no evidence of injury as *4th Amendment of the Constitution of the United States of America* says there must be for excessive force and seizing of property to occur.

53. Clearly my customs are not aligned with the customs of the County of Sacramento nor are they aligned with Mr. Mosley's. We see and do things very differently AND that should not allow one parent more lawful or physical access to the children than the other. My custom's however, are in alignment with the divine instruction of my Prophet Noble Drew Ali as

13

outlined within our DIvine Constitution and Bylaws, The Circle Seven Koran, and 101 Questionnaire.

54. I am not asking this court to assist with my family issues nor am I asking it mediate our custody disagreements. I am making this court aware to the deprivation of rights my children and I have experienced by the hands of the Superior Court of Sacramento, as it refuses to acknowledge me and my children as Natural, first Inhabitant, Moorish Americans who are governed by divine law, who are members of an Ecclesiastical government with its own divine law that is federally recognized and protected by the Constitution of the United States of America.

55. The Sacramento Superior Court has no jurisdiction to unlawfully hand over an order that disrupts this mother/child relationship that I am under divine instruction to protect.

56. There is no injury that justifies any disruption of our parent/child relationship except that of the co-defendant's feelings and belief system.

57. The repeated deprivation of rights and separation as ordered by the Sacramento Superior Court Commissioners Winn and Tedmon have cause irreparable harm to myself and children.

58. The current order impedes on my divine rights to practice my religion as secured by the perfect Constitution and to parent my children as their mother because as long as I pose no imminent danger, threat, or harm to my children, we can never be separated as separation, even for a short time can potentially cause irreparable harm, an EMERGENCY INJUNCTION IS IN ORDER while the United States Federal Court decides the outcome of the class action lawsuit being carried out by my prophet Noble Drew Ali and his heirs.

14

*Per 28 U.S. Code § 1746 I, Keniece Ford-El, a first inhabitant, Moorish American Moslem, a True American National and natural person declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on April 11, 2019

/S/ Ford El, Keniece
_____

Keniece Angelique Ford El


## INTRODUCTION

The defendant has controlled the narrative of our conflict by slandering my name and character in the community and also in the lower court with unsubstantiated accusations. Unfortunately the court has adopted his narrative as truth and has denied me and my children due process to present my side and for the court to discover the facts. The court appears to believe I am the problem when truly the defendant is a controlling and diabolically abusive man who appears to be angry with me for escaping his tyrannical and narcissistic ways. In turn, the defendant is taking his anger out on me while using our children as pawns in his malicious and very evil game. The defendant is and has always been physically, psychologically, verbally, emotionally, financially, and spiritually abusive to myself and now my children and therefore poses an imminent threat to the overall wellbeing of our children as well as myself.

This all started in June of 2015 when the Superior Court of Sacramento answered the ex parte request of the defendant and father for relief from accusations of child abduction by me, the Claimant and mother. The defendant claimed I abducted our two children, Naeem Ade

Ford-Mosley -El, and Nia-Zahra Gennoise-Ford Mosley-El, from Sacramento, California and took

them to Atlanta, Georgia without his knowledge. The defendant had full knowledge of my plan to

take our children to Atlanta as we had a verbal agreement that our children would spend the

summer with me in Georgia. Things went south when the defendant broke our agreement to

receive family counseling together for guidance on how to tell our children that mothermy and

daddy were no longer together. Two days before our appointment, the defendant canceled. We

agreed in the spirit of the children's best interests, that counseling was the best way to handle this

very delicate situation for them.


Prior to him cancelling the therapy session, the defendant made it clear that he was not interested

in working together toward a reasonable co-parenting agreement. Every single one of my

co-parenting petitions were dismissed. He hardly kept his word or honored any of our agreements

when it came to the children. I didn't realize it then but it's clear now that over the three months of

which I was traveling back and forth from Georgia to California, the defendant started to assume

all parental authority and strategically set himself up to push me out of our children's lives

blocking me from phone calls and time with our children.


Afraid that he might attack me as he had in the past or that he would continue to block me from

our children and dishonor his word and our agreements, I took the children with me to Georgia in

May of 2015 only letting the defendant know once we were in Georgia. This proved to be a terrible

mistake, meaning I erroneously presumed that my actions were legal. I am the children's mother

and, the defendant and I were never married, had no court order in place, and I was sure to tell

16

him our location once we were settled; I thought I was doing everything right as it has never been my intention to break the law.

## SUMMARY OF ISSUES

This case presents extraordinary circumstances that require an emergency writ of mandamus to compel a judge to replace the current order with a temporary order while the United States Federal Court decides the outcome of the class action lawsuit as being carried out by plaintiff Noble Drew Ali and his heirs (I am an heir). This temporary order is needed because the defendant, Xavier Mosley cannot be trusted to do the right thing as he continuously acts outside of what is best for our children and has always, since the dissolution of our relationship, stood in the way of my natural relationship with our children by keeping them from spending time with me, blocking phone calls, and monitoring calls. He is now doing this legally with the support of the court.

## NAEEM'S MEDICAL HISTORY

Our son is carrying an unfortunate and heavy burden. He was diagnosed with childhood depression in 2014. He has a rare medical condition called juvenile ossifying fibroma. He is blind in his left eye as a result. The current order impedes on my ability to care for and assist my child through this heavy time.

Recently, the defendant and I learned Naeem's condition has grown to be more critical than it has been over the last year and a half. His surgeon, Kurtis Auguste, is suggesting an "open surgery, both

by craniotomy from above and endoscopic-assisted fibroma resection from below" which means his surgery will include an incision at his head and surgical access through his nose. Dr. Auguste is suggesting the surgery happen within the next month or so, meaning in June. The current order impedes on my constitutional protected right to legally make any decisions for my child.

It's been one year and a half, October 2016 since Naeem's first surgery. Because Naeem's condition is so rare, the defendant and I, with the blessing of Dr. Auguste, agreed we would do our best to discover, if one exists, a complimentary and/or alternative method of addressing and hopefully curing our son's condition. We have been told that while surgery may offer a remedy it does not guarantee a cure.

The defendant and I agreed last year, following a MRI scan post surgery that Naeem would spend a month with me in Oakland so that I could provide him uninterrupted care. While in my care Naeem was seeing a highly respected and qualified Chinese Medicine doctor in San Francisco by the name of Dr. Fêng. In a very short time, Naeem began showing positive signs that a combination of acupuncture, moxa and herbal treatments were helping as a result of weekly visits with Dr. Feng as well as consistent home care treatments of moxa, herbs, and massage. Unfortunately the defendant was negligent and unapologetically inconsistent with Naeem's treatments. He was often forgetting to give Naeem treatments and failed to share Naeem's regimen with the caregivers of which the defendant leaves our children including a time when our children visited the defendant's mother and sister for a whole week. The defendant harassed me about creating a healthy meal plan for Naeem but never honored it nor required his staff of nannies to honor it. Xavier has been negligent and dismissive of our agreement to do the best we can to prevent our

18

son from having to have another surgery. It's indicative of the Xavier's inability to co-parent in a way that values the best interests of our children and honor our agreements.

Our child is facing a very serious and highly invasive surgery, one that requires support and love from both myself, the defendant, and our families. The current order impedes on my right to support my child while he's going through this very difficult time. The current order instead supports the defendant's sinister efforts to keep me and my family away from our children simply because he doesn't like us. His efforts have nothing to do with the best interests of our children as I nor my family pose a threat.

I have never been a danger to my children. I've only been a loving mother willing to always share physical and legal custody with the defendant yet he continues to blatantly misrepresent facts to the court and use the powers of the court and his financial advantage to continue to legally abuse me and our children.

My children's well-being has always been and will continue to be at the center of my love and duty as a mother. Unless blocked by the defendant, I have always been their caregiver and first healer whenever they have been sick. I have never attempted to block medical care for either of my children but have only sought to work alongside their medical providers in effort to assure they always receive the best care.

## HISTORY OF DOMESTIC ABUSE

**The defendant has a history of violence against his domestic partners. He physically abused his ex-girlfriend and was charged with assault on December 13, 2000 in Multnomah, Oregon, case number CMCR 0760388DEF00001.**

I initiated the dissolution of my relationship with the defendant for the third time, in 2013 after experiencing physical abuse of which one time he threatened to "break my fucking neck".

The Mr. Mosley has controlled the narrative of our conflict by slandering my name and character in the community and also in the lower court with unsubstantiated accusations. The court has adopted his narrative as truth and has denied me and my children due process to present my side and for the court to discover the facts. The court appears to believe I am the problem when truly the defendant is a controlling and diabolically abusive man who appears to be angry with me for escaping his tyrannical and narcissistic ways. In turn, the defendant is taking his anger out on me while using our children as pawns in his malicious and very evil game. The defendant is and has always been physically, psychologically, verbally, emotionally, financially, and spiritually abusive to myself and now my children and therefore poses an imminent threat to the overall wellbeing of our children as well as myself.

When the defendant and I were together he worked long hours and traveled often leaving me alone to raise our children. I was happy to be their mother and be their caretaker so I didn't mind. Whenever he became stressed out about bills he would attack me for not having a job, then turn around and harass me for having a job. He would have to take on more responsibility with the

children whenever I was working so I found him shouting at me often saying my job was interfering with his ability to work. It was draining and exhausting. When the defendant first learned of my plans to leave the relationship he and his family accused me of abandoning our children.

Once I was able to plant my feet in a new home and sent for our children to visit with me the defendant accused my of kidnapping our children. *First I was accused of abandoning them then accused of abducting them. This is indicative of how the defendant has always attacked me psychologically. He has always belittled my efforts to better myself by going to medical school. He constantly talks down to me telling me I'm a bad mother for breaking up our family. He tells me Naeem's medical condition is my fault and that I don't deserve to be his or my daughter's mother. Anytime I offer the defendant money he tells me he doesn't need it only to turn around and harass me for not helping him out financially with the kids.*

*The defendant lied to the court about my intentions and our history. He has a history of changing the course of action whenever he feels like it regardless of how these changes affect our children.*

As a result of the defendant's perjury, the lower court gave the defendant full custody leaving me with 6 hours of supervised visits. This happened again on April 5, 2018. The defendant blatantly lied to the court when he filed another ex parte on the grounds of abduction after our son ran away from the defendant's home. The lower court once again sided with the defendant accepting only accusations as justification for granting him full custody and granting me four hours of supervised

21

visits in a certified facility with time paid for by me, the Claimant. The judge ruled that I violated the court order from June 2015.

Because of our son's medical condition, the defendant and I had a verbal agreement to share time with our children 50/50. We have honored this agreement since the Fall of 2016. Because my daughter goes to school in Sacramento I pick her up every week on Friday evening between the hours of 4pm - 6pm; I get Naeem on Thursdays because he's homeschooled. I drop them off in Sacramento on Monday mornings; Nia at school and Naeem at home with defendant. Xavier lied to the court about us ever having this agreement.

The defendant failed to tell the court on April 5th, 2018 that he was guilty of "unclean hands". The defendant refused me access to our daughter for four weeks straight- March 2 - 30, 2018 as well as access to our son on the weekend of March 16th simply because he doesn't like my mother. He holds double standards and only seeks to use the power of the court to gain the upper hand over me, not to protect the best interests of our children.

<u>DEFENDANT'S PERJURY</u>

The defendant blatantly misrepresented facts during April 5th's hearing to discredit me and gain legal custody. He actually trusts me most with our children's health as he always puts my children in my care to heal when they are sick. I have the advantage of being a very intuitive mother, which allows me to know them in ways others do not. I am also an integrative and holistic health practitioner. I hold a Masters degree in Integrative Health Studies and I am currently earning a PhD in Chinese Medicine at the American College of Traditional Chinese Medicine. I'm studying to

22

become a licensed acupuncturist and herbalist. Though I am not a medical doctor, I am a well studied and knowledgeable holistic health practitioner with a deep respect for the doctors who are charged with caring for my children. We have always worked together as a team to keep our children healthy.

## INJURY BY ADDITIONAL DEFENDANTS

***UCSF Benioff Children's Hospital of San Francisco -*** Refused me access to my son during his surgery though there was no order place that expressed I was not allowed to visit my children.

***Darci McKean (Mr. Mosley's attorney) -*** Legal harassment!

***Ann Cinnamon -*** Even after the order as expressed by Commissioner Tedmon, Ms. Ann refuses to hand over the records of sessions she has had with our son Naeem. We have called and emailed her more then three times, to no avail.

**Dr. Gary Bean -** Has been my children's doctors since they were infants. He knows of my religious exemption that protects my children from vaccination, yet he vaccinated them anyway in 2018.

***Defendants Xavier Mosley, David Elliott, Commissioner Winn, Commissioner Tedmon are all listed in the summary above.***

23

## AFFIRMATION

A preponderance of evidence is legally insufficient to limit or terminate any parental rights. Issuance of any temporary order not ordering equal custody is unlawful without convincing evidence that I am unfit or dangerous to my children. Any "non" evidentiary hearing without ability to call witnesses, ability to present evidence, ability to cross examine and notice of every issue before the court that day, cannot legally even reduce parental rights – even a little.

"The Best Interests" of the children, California state statutes are vague, value judgment, and cannot be used until after harm to a child is proven. There was no harm to my children when the court revoked my rights during the ex-parte hearing initiated by Mr. Mosley on April 5th, 2018. There was no abduction per the defendant's accusation. It is my understanding that parental rights are divine birthrights. Equal custody and equal parenting time are the only order the court should give relative to parental rights unless there is clear and convincing evidence, full due process – including the right to confront any accuser and present witnesses and evidence- and strict scrutiny.  However, there is plenty of evidence to support that Mr. Mosley have limited rights to our children. His rights will be limited until he can show genuine good faith to be loving, respectful, and able to put the children's interests in front of his own need for power and control.

## **ORDER**

***Based on the evidence of Mr. Mosley's inability to co-parent in a healthy manner as well as the evidence of his unwillingness to protect the best interest of our children, I demand this remedy that truly values the best interest of our children:***

*According to my religious law, I am to care for my children on a daily basis and therefore will have 100% lawful and physical custody.*

- *Mother shall have sole legal and physical custody of the children.*
- *Children will live with Mother at the commencement of Summer break 2019, allowing them time to finish out their current school year.*
- *Mother will enroll children in school for Fall 2019, in Alameda County where she lives.*
- *Father shall have weekly access to the children, including visits and daily phone calls.*
- *NON CUSTODIAL parent gets the children every other weekend, Friday - Monday morning during the school year.*
- *Father shall refrain from emotional and mental abuse of the children as well as derogatory conversation about mother, mother's family and belief system.*
- *Father is required to attend therapy and 20 hours of parenting classes to continue to have access to the children. Must be completed by September 2019.*
- *Father will be allowed 4 hours of professional supervised visitation with the children for failure to complete therapy and classes by September 2019.*
- *Mother and father will split the summer 50/50 - Father gets the 1st half; Mother gets the second half.*
- *Children are NEVER to be vaccinated as this is against Moorish American Law!*
- *Father shall pay mother $5,000/mo. in child support.*
- *Exchanges shall occur in Fairfield, California. All exchanges shall be peaceful and conflict free.*

- *Father shall check in with mother before taking children out of the state and is not to make plans to take the children out of the Country until a notarized agreement is made between he and Mother.*

- *Mother and father shall discuss medical and educational decisions.*

- *In the event Mother and father disagree on major decisions, Mother's decisions about health and education take precedence as governed by the laws of her religious society.*

- *Mother and father shall continue co- parenting counseling in Sacramento with Stephanie Stilley for a total of 6 sessions.*

- *In the event of conflicts, Mother and Father are to resolve conflicts, as much as possible, within their faith based communities. If issues cannot be resolved peacefully without court interference, father will be responsible for any and all court fees including attorney fees of Mother.*

*Per 28 U.S. Code § 1746 I, Keniece Ford-El, a first inhabitant, Moorish American Moslem, a True American National and natural person declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on April 16 2019

/s/ Noble Drew Ali, Sheik Johns El, S Grand Governor, Disciple in   Trust
Sheik S. Johns El   Moorish American Moslem

Noble Drew Ali
P.O. Box 8606
Lancaster Pennsylvania 17604
mstoa16.pa.gov@gmail.com
717 615 0942

26

# EXHIBIT: 1

Proof of Nationality and Divine Creed







In the name of Allah, most gracious.

I, Bro.SShaikR., do Affirm that the following information & signatures of the members are that & authentic, according to our rules & usages and customs.

His now under my head & our Holy Sal.

Bro.S. Gehu El-Sheik. Magistrate
Moorish Divine & National Movement of North America
Moorish Science Temple of America



Nativity: Jan 10, 2008
Gender: Woman   Eyes: Brn
Weight: 10   Height: S
Hair: Brn

Secretary Signature: Sis N Ali Bz
Name: Nia Moorey El   Age: 10
Room #: 80
Instructor: _____

Nativity: Nov 30, 2005
Gender: Male   Eyes: Brn
Weight: 150   Height: 5.1
Hair: BLK

Secretary Signature: Sis N Ali Bz
Name: Mu'min Ford El   Age: 12
Room #: 80
Instructor: _____

Nativity: May 13, 1977
Gender: Woman   Eyes: Brn
Weight: 130   Height: 5 1/2
Hair: Blk

Secretary Signature: Sis N Ali Bz
Name: _____ El   Age: 40
Room #: 80
Instructor: _____

# EXHIBIT: A

Court orders

**Superior Court of California**
**County of Sacramento**
**DISPOSITION OF EX PARTE APPLICATION ATTACHMENT**
**FAMILY LAW**



FILED / ENDORSED

JUN - 5 2015

E. Hultgren, Deputy Clerk

Future Hearings: Not entered in sustain yet

Xavier L. Mosley
Petitioner

vs.

Keniece A. Ford
Respondent

Other Parent/Claimant

Date of Application: _____
Case Number: 15FL02801
Notice was given on: 6/4/15
at: 7:50 ☒am ☐pm to appear in
D 120 at 8:30 _____ ☒am ☐pm
by : ☒Telephone ☐ In person ☐ Fax/Email
☐ Other: _____

---

Moving Party: ☒ Petitioner ☐ Respondent ☐ Other _____

---

Appearances:

☒ Petitioner       ☒ (Attorney) John Montero
☒ Respondent       ☐ (Attorney) _____
☐ Other: _____  ☐ (Attorney) _____

---

☒ The application is granted.
☐ The application is granted as modified below.
☐ The application is denied. Insufficient showing of immediate harm (i.e., no emergency). (See Family Code §3064; and Cal. Rules of Court, Rule 5.151(d).)

☐ The application is denied due to lack of notice. (See Cal. Rules of Court, Rules 5.151(e), 5.165.)
☐ This matter may be heard on the court's regular hearing calendar.
☐ Parties are referred to Family Court Services for ☐ immediate ☐ regular mediation.
☒ Other: _Children ordered returned_
_to California by 6-15-15._

_Mother entitled to supervised_
_visits with children in Sacramento_
_up to 6 hrs. per week w/_
_a mutually agreed upon supervisor_

Dated: 6-5-15

Judge of the Superior Court

JOHN P. WINN

FL/E-LP-633 (6/24/14)         Order Determining Disposition
of Ex Parte Application         Local Rules 5.13
www.saccourt.ca.gov

FILED/ENDORSED

FL/E-LP-633

APR - 5 2018

_____, Deputy Clerk

# Superior Court of California
## County of Sacramento
### DISPOSITION OF EX PARTE APPLICATION ATTACHMENT
### FAMILY LAW

Xavier Mosley
Petitioner

vs.

Keniece Ford
Respondent

_____
Other Parent/Claimant

Future Hearings: None

Date of Application: 4/5/18

Case Number: 15FL02801

Notice was given on: 4/4/18

at: 9 ☑am ☐pm to appear in

D 121 at 8:30 ☑am ☐pm

by : ☐ Telephone ☐ In person ☐ Fax/Email
☑ Other: VM

Moving Party: ☑ Petitioner  ☐ Respondent  ☐ Other _____

Appearances:

☑ Petitioner               ☑ (Attorney) Darci McKean
☑ Respondent               ☐ (Attorney) _____
☐ Other: _____  ☐ (Attorney) _____

☐ The application is granted.

☑ The application is granted as modified below.

☒ The application is denied.  Insufficient showing of immediate harm (i.e., no emergency). (See Family Code §3064; and Cal. Rules of Court, Rule 5.151(d).)

☐ The application is denied due to lack of notice. (See Cal. Rules of Court, Rules 5.151(e), 5.165.)

☐ This matter may be heard on the court's regular hearing calendar.

☐ Parties are referred to Family Court Services for ☐ immediate ☐ regular mediation.

☑ Other: ① FATHER SHALL HAVE SOLE LEGAL CUSTODY OF CHILDREN. ② MOTHER SHALL HAVE SUPERVISED AROUND (50,510,104 PARENTING TIME WITH CHILDREN FOR UP TO 4 HOURS PER WEEK. THE SUPERVISOR MUST BE IN THE SACRAMENTO AREA. MOTHER SHALL PAY FOR THE COST OF SUPERVISION. ③ MOTHER SHALL RETURN CHILD NATOM MOSLEY TO FATHER BY 6PM TODAY. ④ COURT AFFIRMS PRIOR ORDER FOR 3111 EVALUATION WITH DAVID KESSEL ⑤ REVIEW HEARING ON 3111 EVALUATION IS SET ON 7/9/18 AT 9:00am FATHER SHALL PAY FOR 3111 EVALUATION.

Dated: APR - 5 2018

_____
Judge of the Superior Court

SCOTT L. TEDMON

FL/E-LP-633 (6/24/14)   Order Determining Disposition of Ex Parte Application

Local Rules 5.13
www.saccourt.ca.gov

# Superior Court of California
## County of Sacramento
### William R. Ridgeway Family Relations Courthouse

### Findings and Order After Hearing

ELECTRONICALLY FILED BY
Superior Court of California
County of Sacramento
**Family Law**
**1/14/2019**
**4:33 PM**
E. Chang - Deputy Clerk

| | | | |
|---|---|---|---|
| **Date:** | 1/14/2019 | **Judicial Officer:** | Scott Tedmon |
| **Time:** | 10:00 AM | **Clerk:** | E. Chang - Deputy Clerk |
| **Department:** | 120 | **Reporter:** | none |
| **Moving Party:** | Respondent | **Interpreter(s):** | |
| **Filed Date:** | 6/1/2018 | **Case Init. Date:** | 6/2/2015 |
| **Case Number:** | 15FL02801 | | |
| **Case Type:** | Private Paternity | | |
| **Hearing Type:** | OSC Custody | | |

**Parties and Appearances**

| | | | |
|---|---|---|---|
| Petitioner: | Xavier L. Mosley (present) | Attorney: | Darci McDermott (present) |
| Respondent: | Keniece A. Ford (present) | Attorney: | Eric Riviera-Jurado (present) |
| Other Party: | | Attorney: | |
| Other Attendees: | | | |

---

After review of the pleadings and hearing oral argument, the Court orders the following:

## Custody and Visitation

Naeem - 13 (DOB: 11/30/2005)
Nia - 10 (DOB: 1/10/2008)

1. The Court adopts the recommendations of the FC 3111 Private CCRC David Elliott, as set forth on pages 33-34 of his report and which are attached herewith as part of this order.

2. Paragraph 3 of Mr. Ellliott's recommendations, as set forth Mother's unsupervised parenting time shall begin on 1/26/19.

3. Mother's parenting time is restricted to the following counties: Alameda, San Francisco, Contra Costa, Santa Clara, Solano, Yolo, Sacramento, San Joaquin, and Placer.

4. Exchanges shall occur in Fairfield. All exchanges shall be peaceful and conflict free.

5. Mother and Father's co-parenting classes as set fourth in Mr. Elliott's recommendation in paragraph 6 shall begin within 30 days. The parents shall equally share the cost of counseling.

6. Nia shall continue counseling with Emily McDougal for at least 2 additional sessions and from there until Ms. McDougal determines counseling is no longer needed.

7. Both parents shall have access to the children's medical and school records.

---

## Findings and Order After Hearing

**Date:** 1/14/2019          **Time:**  10:00 AM          **Dept:** 120

**Case Number:**  15FL02801

**Case Title:**   XAVIER L. MOSLEY VS. KENIECE A. FORD

Cont.

8. Both parents may attend the children's medical appointments, school events, and extracurricular activities.

9. Mother's phone calls with children shall be unsupervised.

10. A status review report from the co-parent counselor, Naeem's therapist and Nia's therapist shall be provided to counsel and the Court by 4/8/19.

11. A review hearing on custody, visitation, holiday and summer schedule is set on 4/22/19 at 9 AM.

12. Petitioner's request for attorney's fees pursuant to FC 271 is reserved to the 4/22/19 hearing.

13. Mr. Elliott's FC 3111 CCRC Evaluation Report is confidential and shall be sealed, other than the recommendation attached herewith.

Set for Order to Show Cause on 4/22/2019 at 9:00 AM in department 120.

## Other Attachments

In addition to any attachments explicitly called out in the form, the following are attached to the end of this document in the order of appearance:

1) Mr. Elloitt's Recommendations

_____          Date:    1/14/2019

Judicial Officer

## Recommendations

Based on the above analysis and data the following is recommended in the best interest of the children at this time:

*Legal and Physical Custody*

1. Legal Custody: Father shall continue to have temporary sole legal custody of the children.
2. Physical Custody: Father shall continue to have temporary sole physical custody of the children.

*Parenting Plan*

3. Mother's parenting time shall be every other weekend from Saturday at 9:00am until Sunday at 7:00pm.

4. Mother shall have phone contact with the children on Mondays, Wednesdays and Fridays at 8:00pm. Mother shall call the children. Father shall make the children available. Mother and Father can agree on a different time, however if no agreement is made the time shall be 8:00pm.

5. Father's parenting time shall be all other time not accounted for above.

*Communication and Counseling*

6. Parents are to attend and complete a minimum of 10 sessions of Co-Parenting Counseling. The following four therapists would be appropriate:

    A. Carol Greenfield, MFT – (916) 924-1202
    B. Tim Rood, MFT – (916) 492-6246
    C. Jack Love, MFT – (916) 929-5765
    D. Stephanie Stilley, LCSW – (916) 923-9300

7. Mother shall attend counseling to address issues identified by this report. The therapist is not limited to the issues in this report and shall also treat any other issues identified. The therapist shall be given this report to gain information about the issues. The therapist shall determine the frequency of the counseling.

*Care of Children*

8. Naeem shall continue to be in counseling with Ann Cinnamon. The frequency of the counseling shall be determined by Ms. Cinnamon.

9. Mother shall not travel with the children outside of her home area unless it is to exchange the children with Father.

10. If a parent has a concern about the physical or emotional safety of the children, they are directed to confer with the other parent about his or her concern.

11. Parents and significant others shall not make negative or disparaging comments about the other parent or the other parent's significant other in front of the children, to the children or around the children.

12. Mother and Father shall go to Child Custody Recommending Counseling in 6 months to evaluate Mother's adherence with the above recommendations and the parenting schedule.

Respectfully submitted,

*David T. Elliott LCSW*

David T. Elliott, LCSW

# EXHIBIT:  B

Letters from Children's Hospital blocking me from Naeem during his surgery &
Proof alliance w/ Naeem's doctor.

Mosley, Naeem A (MR # 60499462)

Encounter Date: 09/05/2018

# Mosley, Naeem A

MRN: 60499462

**Progress Notes** Encounter Date: 9/5/2018

### Rebecca Gates

**Social Work Note**
**Date of Service: 9/5/2018**

Obtained more recent court order (7/9/18) from mother (Keniece Ford) via email that limits her to supervised phone calls with her children. Court order has been scanned into APEX.

Notified mother by secured email today that she is not permitted to visit during Naeem's upcoming hospitalization based on the court orders on file.  Per court order, father (Xavier Mosley) is required to keep her up to date on their children's medical information.

FYI describing this plan is in place.

Rebecca Gates, LCSW
Manager, Pediatric Social Work
502-2188

Social Work
on 9/5/2018

Mosley, Naeem A (MR # 60499462)                    Encounter Date: 09/06/2018

# Mosley, Naeem A

MRN: 60499462

**Progress Notes** Encounter Date: 9/6/2018

### Rebecca Gates

**Social Work Note**
**Date of Service: 9/6/2018**

Spoke with mother (Keniece Ford) at 510-993-8462 to discuss her concerns that UCSF is misinterpreting the court orders on file. Reiterated that per the court orders she is not permitted to visit during Naeem's upcoming hospitalization but is allowed supervised phone calls  Per court order, father (Xavier Mosley) is required to keep her up to date on their children's medical information.  Mom requested to speak with my director with information provided per her request.

FYI describing this plan is in place. Court orders have been scanned into APEX.

Rebecca Gates, LCSW
Manager, Pediatric Social Work
502-2188

Social Work
on 9/6/2018



From: **Kenlece Ford** [email address]
Subject: Your report
Date: November 29, 2018 at 12:16 PM
To: [email address]
Cc: [email address]

David,

Stephanie reached out to me by text the other day and asked that I give her my availability for another session per Xavier's request. I'm a bit confused about how we got here. You told me two months ago that you were done with the assessment and would be working on turning in your report.

I'm also curious to know why mine and my lawyers emails requesting your time frame for completion have gone unanswered.

I'd like to note that I spoke with one of my collateral contacts today and it seems you haven't reached out to them yet either. Do you plan to do so?

Forgive me if I'm a bit sharp but my children and my time with them are at stake here. They told you with their own mouths that they miss me. I can't get lost time back, and for what? I am not a danger nor a threat to my children.

No one has been able to prove otherwise.

I'm definitely curious about what might be dragging this process out, if my children's well being is being taken into account, and if the amount of time we've already spent apart might be weighing on you.

I'm praying this process is a fair one and there is no bias towards Xavier because he's paying for this.

I must be honest and tell you I don't feel a whole lot of compassion here for our situation nor do I feel a sense of urgency. That's a huge concern.

Please, help me understand why you need to see me again and why are we waiting an additional month for you to finish your report. I've been more than compliant and am willing to continue to comply And, I I'm entitled to some answers.

Thank you,

Kenlece


Sent from a woman with stars in her hair

From: **Kenlece Ford**
Subject: Your Report
Date: November 20, 2018 at 1.01 PM
To:
Cc:



Hi David,

I'm writing to discover if you have finished or are close to finishing your report. The December 3rd court date is fast approaching as birthdays and holidays also are and I'd like to spend this special time with my children.

Naeem is turning 13 in 10 days and I've only been me with refusals to have a conversation about his bday plans.

Nia has experienced things in her life that most any mothers would want to be present for but I missed.

I appreciate your process and frankly I'm tired, frustrated, and annoyed about how long this process is taking. It feels dismissive to mine and my Children's desires.

With that said, please grant me insight into your progress and when we might be seeing your report.

Thanks sincerely,

Keniece


Sent from a woman with stars in her hair

Best to you and Naeem for now.

Regards,
KA

**From:** Keniece Ford <keniece@me.com>
**Sent:** Monday, November 27, 2017 5:26:39 PM
**To:** Auguste, Kurtis
**Cc:** Xavier
**Subject:** Re: Naeem's progress

Hi Dr. Auguste!

I hope it's not asking too much for you to send us a summary of Naeem's most recent MRI and of our discussion about the plan for future treatment?

Also, would you please verify our discussion about Naeem continuing to see Dr. Fang and receive Chinese medicine as a complimentary treatment over the next 3 months (the time between now and his next MRI).

It is my understanding that 3 months allows enough time to assess the progress of treatment as an alternative option to another surgery.

Is this accurate? I want to make sure we're all on the same page.

Thank you,

Keniece

Sent from a woman with stars in her hair

On Oct 24, 2017, at 1:08 PM, Auguste, Kurtis <Kurtis.Auguste@ucsf.edu> wrote:

Sure.  How can we connect?

**From:** Keniece Ford <keniece@me.com>
**Sent:** Thursday, October 19, 2017 10:06:16 AM
**To:** Auguste, Kurtis
**Cc:** Xavier
**Subject:** Naeem's progress

Hi Dr. Auguste!

I hope this message finds you and your family well.

Naeem is seeing a Chinese Medicine doctor at a clinic in SF, which happens to be connected through the UCSF system.

His name is Dr. Fang. He's really great and thorough. Naeem has been seeing him for about 3 weeks now.

He would like to speak with you to learn more about Naeem's medical history and take the info to his team of practitioners.

Would you be willing to speak with him anytime soon?

We'd be very grateful!

Thank you,

Keniece of

Sent from a woman with stars in her hair

From: **Auguste, Kurtis** Kurtis Auguste@ucsf.edu
Subject: Re: Naeem's progress
Date: December 19, 2017 at 9:47 PM
To: Keniece Ford keniece@me.com
Cc: Xavier xmosley@me.com

Hello Keniece. I have to apologize: my wife and I are on-call for the Christmas and New Year's holidays respectively and we rushed to take our kids back East to see family this week instead. This usually means a hectic period before we leave because we don't take vacation often and have to put everything in place before we depart. It's been a while since we have taken time for ourselves. There are many members of my family who still had not met my 3 year old daughter. Every so often, I have to step away from my practice to attend to my own family which I neglect pretty much every other time of the year. Just not enough hours in the day unfortunately. Even now, I can only find a quiet moment to check in on my patients after midnight here. In any event, I am sorry that it has taken me so long to respond to your request to summarize the next steps of care for Naeem.

In response to your questions:
- Naeem's most recent MRI continued to show findings from his prior post-operative MRIs: the upper portion of the fibroma has been largely emptied of solid material and is effectively cystic. The lowest portions, which were tucked away and not reachable from our prior craniotomy, are solid and looked more solid than on past scans. This suggest that the fibroma is consolidating and possibly progressing but it was hard to say that it was expanding. The left medial rectus muscle of his orbit is being pushed by some of that lower solid material as before and this is likely contributing to the bulging of his left eye. His right eye continues to look clear of the fibroma for now.
- The standing recommendation from our multi-disciplinary UCSF Surgical Group (myself, Dr. Theodosopolous, Dr El-Sayed) was that only a combined above and below surgery made sense for Naeem. We also gave you a list of other recommended teams in Ohio and Pittsburgh that you could approach if you were interested in a 2nd or 3rd opinion.
- Given that the surgical option was not one you as a family were ready for at this time and given that you had coordinated an alternative treatment plan with Dr. Fang, I recommended an interval MRI scan in 3 months, simply to keep track of this lesion and make sure it wasn't
silently expanding, perhaps threatening that right eye. During that time, you would continue to receive a treatment plan in alternative medicine directed by Dr. Fang.
- Regarding the amount of time to assess the progress of treatment, unfortunately I have no background in alternative therapies to make any comment on this and would defer completely to Dr. Fang on this one. Only he could determine when is adequate or not to see results. Naeem would be the first of my patients to try an herbal therapy for a brain tumor or fibroma and there are no published reports of this option in our medical literature. I hope Dr. Fang would be able to shed some more definitive light on this for you.

Please forward any additional questions you may have via e-mail. Unfortunately, this entire week has been spent shuttling from family home to family home and I wouldn't have time to step away to talk by phone. I will be checking e-mail again in the next 24-48hrs once I have the chance.



From: **Kenlece Ford** thebeautykween@gmail.com
Subject: IMG_6907.PNG
   Date: April 10, 2018 at 6:30 AM
    To: Keniece Ford keniece@me.com

 **T-Mobile   LTE**          **4:19 AM**           12% 



Naeem

> Have you been taking your herbs?

Ok no...

> No herbs at all???

I'll do it right when I get back

> Get back where?

To the house

> Did you bring them with

From: **Auguste, Kurtis** Kurtis.Auguste ¤ ucsf.edu
Subject: **Visit summary (4/25/16)**
Date: April 26, 2018 at 7:03 PM
To: xmosley ¤ icloud.com, keaaaca ¤ me.com

Hi guys,

Attached is the letter I sent to Dr. Bean's office summarizing the findings and discussion from our visit yesterday.  Hope this is helpful for this upcoming decision-making process.  Let me know how I can help.

Best wishes,
KA

Dear Dr. Bean,

We had the pleasure of seeing Naeem A Mosley in our office with a chief complaint of a juvenile psammamatoid ossifying fibroma of the skull base.

The patient is a 12 y.o. male. He has a history of headaches and left eye vision loss. His work-up revealed a cystic frontal skull base tumor. He is status-post a bifrontal craniotomy and tumor debulking for optic nerve decompression on 10/21/16. His intraoperative pathology was consistent with a juvenile psammamatoid ossifying angiofibroma.  He was last seen in follow up on 11/8/17. At the time, I discussed the proximity of his fibroma to his right eye vision as well as to his hypothalamus and pituitary gland. Extensive discussion with endoscopic and skull base experts at UCSF led to the consensus recommendation of more extensive open surgery to eradicate as much of his fibroma as possible as a gross total resection would be difficult to achieve. At the conclusion of that visit, the family agreed to consider further surgery but was also considering an alternative medicine approach to treatment which they ultimately pursued. I requested that, if the family did not want surgery at present, an interval MRI of the brain should be performed in approximately 3 months.  The family has had this scan completed and is here now to discuss the findings.

Since our last visit, Naeem was seen by Dr. Koseoglu from the Ophthalmology service on 2/8/18 which showed left nerve temporal atrophy and left exotropia. The patient has not had any significant headache and his only recent complaint is of tenderness along his paraspinal musculature at his skull base on the right.  He has not had any subjective change in his vision. The patient reports that he has not had any significant weakness, sensory abnormalities, gait difficulties or issues with coordination.  He complains of tenderness along the incision where underlying plating hardware is palpable.

Review of Systems
Constitutional: Negative for fever.
Respiratory: Negative for cough.
Gastrointestinal: Negative for vomiting and diarrhea.

Past Medical History:

Past Medical History.
Diagnosis Date
• Benign tumor of bones of skull and face
Juvenile psammomatoid ossifying fibroma of planum sphenoidale
• Mild exercise-induced asthma
• Vision loss, left eye
Onset: May 2016


Current Outpatient Prescriptions on File Prior to Visit
Medication Sig
Dispense Refill
• albuterol (PROVENTIL HFA;VENTOLIN HFA) 108 (90 base) mCg/act inhaler
Inhale 1-2 puffs into the lungs every 6 (six) hours as needed for shortness of breath/wheezing . --
DISPENSE ANY BRAND COVERED BY INS
• benzoyl peroxide 5 % gel
Apply topically every evening at bedtime . 90 g 3
• diphenhydrAMINE (BENADRYL) 25 mg tablet
Take 1 tablet (25 mg) by mouth every 6 (six) hours as needed for itching .
90 tablet 0
• fluocinonide (LIDEX) 0.05 % ointment
Apply topically 2 (two) times a day . 30 g 0

No current facility-administered medications on file prior to visit.


No Known Allergies

On examination Ht 152.4 cm  | Wt 74.8 kg  | BMI 32.22 kg/m² .
Physical Exam
Constitutional: He appears well-developed and well-nourished. He is quiet and reserved but
pleasant, mature and cooperative. He does not appear ill. No distress.
HENT:  Left eye proptosis is present.  His extraocular movements are full. There is light
perception in the left eye.  Area of tenderness along skull base corresponds to a palpable, mobile
lymph node.  Cranial hardware is palpable at the midportion of his incision at the hairline. His
bicoronal incision is well-healed.
Mouth/Throat: Mucous membranes are moist.
Neurological: He is alert. He has normal strength. He displays no atrophy. No sensory deficit. He
exhibits normal muscle tone. Coordination and gait normal.
Skin: Skin is warm and moist.
Psychiatric: He has a normal mood and affect. His speech is normal and behavior is normal.


Imaging:
I reviewed an MRI of the brain from 4/9/18.  This shows that his skull base lesion has increased in
size now measuring approximately 5.1 by 4.7 x 5.0 centimeters, previously 4.6 x 4.8 x 4.3 cm.
There is an increase in the enhancing tissue and septations within the superior half of the lesion

There is an increase in the enhancing tissue and septations within the superior half of the lesion and solid material is filling in the cavity which was previously evacuated by his surgery.

ASSESSMENT AND PLAN:
In summary, this patient has a juvenile ossifying fibroma of the skull base which has caused left eye blindness as well as left-sided proptosis. As previously discussed, this is a very rare condition and rarer still in this anatomic location.  Its presence in the skull base presents multiple technical challenges and is difficult to access. In addition, vital neuroanatomic structures reside close by. Although he does not have any new symptoms, I remain very concerned about his lesion and the threat that remains to his right optic nerve, his vision, and neighboring structures such as the carotid arteries, the hypothalamus and the pituitary gland.  We discussed the imaging findings which reveal interval re-growth of his lesion. With these findings in mind, I have recommended open surgery, both by craniotomy from above and endoscopic-assisted fibroma resection from below to give him the best possible chance for disease cure.  I've asked the family to return home and give this recommendation serious consideration and they agreed. I've asked the family to contact me with any new questions or concerns. Should the family decide to observe further and not pursue surgery, I would want an interval MRI in approximately 1 month's time.

I'll be standing by to help this wonderful young man and his parents in any way I can.

Greater than 50% of this clinic visit was spent on patient counseling and coordination of care.

Thank you very much for allowing us to participate in his care. Should you have any questions or concerns, please feel free to contact us at 1-800-550-1529 or you can page us through the hospital operator at (510) 428-3000.

Sincerely,


Kurtis I Auguste, MD  4/25/2018
Division of Neurosurgery
UCSF Benioff Children's Hospital Oakland

# EXHIBIT:  C

History of Domestic Violence by Mr. Mosley

## Xavier Mosley



**62x VIEWED**

### Personal Details

| | |
|---|---|
| Address | 2911 Ne 21St Ave Portland OR 97211 |
| Age | 45 |
| Date of Birth | 11/17/1972 |
| Sex Offender | No |
| Ethnicity | BLACK |
| Gender | Male |

### 12/13/2000 - Offense - Assault-4

| | |
|---|---|
| Offense Date | 12/13/2000 |
| Charges Filed Date | 12/13/2000 |
| Crime Location | Multnomah, OR |
| Crime Type | Misdemeanor |
| Offense Description | Assault-4 |
| Case Type | Offense Misdemeanor 1 |
| Case Number | CMCR076038BDEF00001 |
| Court Name | Multnomah County Courts |





**LA CASA DE LAS MADRES**

A Refuge.
An Advocate.
A Strong Voice
Against Domestic
Violence.

May 9, 2018

La Casa de las Madres
1663 Mission Street, Suite 225
San Francisco, CA 94103

Tel: 415.503.0500
Fax: 415.503.0301

Crisis Line: 877.503.1850
www.lacasa.org

To whom it may concern:

This letter is to verify that Keniece Ford received services at La Casa de las Madres from 10/27/15 to 2/27/17.

La Casa de las Madres is a domestic violence agency that offers emergency residential shelter and non-residential services to women, teens, and their children while providing advocacy, counseling, family-based services, and referrals. Our Drop-In Center also houses our two 24 hour Crisis Lines, Teen Program, Safe Havens and Safe Housing Projects, and Community Education and Outreach Program. Off-site we run the Emergency Shelter Program, Domestic Violence Response Team and the Mary Elizabeth Inn Case Management Program.

If you require any more information, please have Keniece Ford sign a consent to release information and contact La Casa de las Madres at 415-503-0500.

Thank You,

Julieta Duarte
Community Programs Manager
La Casa de las Madres

# UNITED STATES DISTRICT COURT

## FOR THE

## EASTERN DISTRICT OF PHILADELPHIA

Case No.: **5:18-cv-5655**

**NOBLE DREW ALI,** et al

*Plaintiff,*

**RE: 15FL02801**

*Vs*

**Xavier Mosley,** et al

*Defendant,*

RECEIVED
APR 1 8 2019

# <u>Certificate of Service</u>

The undersigned claimant hereby certifies that on April 2019 he personally caused to be served the following a true and correct copy of the foregoing Removal to Federal Court Title 28 1441- `1442 1443, 1446 Notice Writ Emergency Writ of Mandamus with Exhibits , Notice Emergency Injunction  by mailing  certified mail. *Complaint and Injunction :*

Clerk of Courts ED Pa
James A Bryne U.S Courthouse
Room 2609
601 W. Market Street
Philadelphia. Pennsylvania 19106

/s/ Noble Drew Ali Sheik S. Johns El Grand
     Governor Disciple in Trust
     Noble Drew Ali,
      Moorish Science Temple No.16
      P.O Box 8606
      Lancaster, Pennsylvania, 17604
      717 615 0942
      mstoa16.pa.gov@gmail.com



Clerk of Courts EDPa
James A Byrne U.S. Courthouse
Room 2609
601 W Market Street
Philadelphia Pennsylvania 19106

$8.60
PRIORITY MAIL 2-Day®
1 Lb 1.70 oz
1006
C019
EXPECTED DELIVERY DAY: 04/18/19
SHIP TO:
601 MARKET ST
RM 2609
PHILADELPHIA PA 19106-1732

USPS SIGNATURE TRACKING NUMBER
9510 8115 9396 9107 2427 70

U.S.M.S.
X-RAY

TRACKED
INSURED

PRIORITY MAIL

UNITED STATES
POSTAL SERVICE